You may proceed. Your Honor. You may. Thank you very much. May it please the Court, Lewis M. Phillips on behalf of Saratoga, the appellant, opposing counsel, it's a privilege to be here. Your Honor, this matter is brought to you on appeal from a summary judgment grant in favor of the appellee and against Saratoga in connection with an insurance policy term, a deductible provision. Hurricane Isaac rendered loss or caused loss to Saratoga facilities and there arose a dispute about the applicable deductible that was to be paid by Saratoga. The dispute is in the range of $912,000 as claimed by Lexington and $400,000 as claimed by Saratoga. We start first with the salvo that to Saratoga the policy is not ambiguous. I would say that it's not a picture of clarity but it is not an ambiguous policy because there are not two reasonable interpretations that the parties have offered. In the name of constructing or sculpting a rhinoceros by knocking off everything that doesn't look like a rhinoceros, we start with what the Lexington policy is not. And the way to start off with what the Lexington policy is not is to focus on the argument of the appellee and the ruling of the district court below in convecting the interpretation of the deductible provision. In the Saratoga case, we have a general realm of perils that are insured. The perils include fire, lightning, explosion, windstorm or hail, smoke, aircraft, vehicle impact, riot strike or civil commotion, vandalism, malicious mischief, leakage from fire protection equipment. A lot of perils that are insured. This is at record 33. We provide the court with exhibits and that's exhibit number one. The district court and Lexington offer the following in connection with the Lexington policy at issue and the dispute arises as a result of the fact that the cause of the loss was a hurricane, a named windstorm, which is an insured loss and it's a loss that's set out separately in the deductible arena within the Lexington policy. If we look at record 211 and that would be exhibit four that we provided to the court, we see that the deductible is a the deductible provisions of the policy at issue are twofold. Number one, there is a deductible of $125,000 which is the general deductible for losses that are covered under the policy and the language is each claim for loss or damage on this policy shall be subject to a per occurrence retention amount of $125,000 and here's a very key word, unless unless a specific deductible shown below applies and the specific deductible shown below that applies is the Earth Movement Flood and Named Windstorm deductible which was the portion of the coverage that caused the loss that was claimed by Saratoga. It was a hurricane and so what we have set up is a policy which has mutually exclusive deductible provisions. Number one, the $125,000 deductible applies to all loss under the policy except the specific loss generated by the Earth Movement Flood and Windstorm policy. The analysis of the district court and the analysis of the Judge Miller as I read his holding the principal problem he had with your interpretation I mean why he ruled against you is because he says your interpretation gives no meaning to the term total insurable values being a plural term meaning more than one value. Why is he wrong? Explain how under your theory you can have that plural term. The reason that the district court was wrong is that he started off wrong. The district court started off wrong by saying that the Lexington policy admits of two different perils that could cause loss and two different deductibles that could apply. It can't. The only deductible that can apply to the named windstorm loss is the named windstorm deductible. If you look at the Bexar case and his analysis comes from Bexar and the Lexington analysis comes from the Bexar case which dealt with a different policy. We've given you the Bexar policy as exhibit two and in that case you have a provision regarding the deductible and then you have a two or more provision and then you have a list of deductibles all different and the list of deductibles it deals with different perils and the Bexar case even says that the perils named windstorm, it says earth movement flood named windstorm 5% of total insurable values. It's right within that total insurable value. What he's not focusing on and what he can't focus on because he's misunderstood the two or more applicable deductibles is he has decided that the two or more applicable deductibles relate to other perils and it can't because the deductible provisions are exclusive so the only place that the two or more deductible provision can apply is to the named windstorm deductible and so what we have posited as our interpretation is that because you can't have two or more perils causing a loss for which two or more deductibles apply if you're talking about different perils which was the case in Bexar. You could have fire, you could have wind, you could have flood. Each may have a separate deductible and each could cause loss and you chose the largest deductible from those perils. Here the only peril you can choose from is the earth movement flood and windstorm named windstorm provision and so what we have said is that because you either do what Lexington and the district court does do which is read out the two or more applicable deductibles or you apply them to the named windstorm loss and if you apply them to the named windstorm loss then where you get to is the schedule that we have referred to in our brief and that we have provided as exhibit number 5 at record 168 and if you look at that schedule each there are two columns, a middle column and a final column and each of the final column says total insured value per interest and our position is that if the two or more applicable deductible provision is to have meaning it can't under the Lexington and district court interpretation because they are mutually exclusive deductibles if it's going to have... I very well would be confused and it may be my fault, I'll acknowledge that but you're saying the 5% of total insurable values does not apply to named windstorm even though it directly follows that? Yes, it does. It's the only thing that applies to the named windstorm but the two or more applicable deductibles also only applies to named windstorm. But I thought you're saying the 5% applies to the value of each individual property. It does. But what words in the phrase total insurable values indicates it applies to the value of each individual property? Nothing in that phrase your honor. What phrase does require that application is the two or more applicable deductible phrase. It can only apply to the named windstorm loss. Okay, I'm just, just hear me out here. Yes ma'am. If damage to multiple properties during a single event is deemed one occurrence, right? Yes. And processed as a single claim, right? Yes. Doesn't it make more sense that total insurable values is referring to the aggregate because it's total of the insurable values of all the damaged properties as lumped as one occurrence which is a single claim. Doesn't that make more sense? No your honor. Why not? Because if that is the way you do it, then you can never have effect to the two or more applicable deductible provision in the policy. It can't apply to anything else except the insured values per interest as per the schedule. You would read out that provision of the policy. You would never have two applicable deductibles for a loss where you would have to choose the larger deductible because A, the general deductible is $125,000 and that applies to all perils. So if you had two perils you don't choose. There's no two applicable deductibles. There's one. And you can't have two deductibles applying to the name windstorm because the deductible provision of the name windstorm is exclusive. The general deductible applies unless there's a specific deductible below. And where the specific deductible below is, is with the name windstorm loss and below that is the two or more deductibles applying. You apply the largest deductible. You would never apply that provision unless you looked at individualized total insured values and chose the largest one. What about if it's your harmonizing the situation between two event, I mean two causes of the event? You can't do that under the policy. Earth movement, flood, name windstorm. That's one loss. That's one type of loss. You would never have, you're in the same position. You're in the same position. You're in the same position. Is there a large deductible that would apply then? You would have to calculate it the same way. The loss would be the loss. And so you have total insured value per interest. That, there's, as we point out, total insurable values is not a defined term in the policy. I guess I'm just, can you help me? I've looked at this a lot, this policy, but it seems to me that if the incident is caused by the earth movement, but then also some other thing, that what you do is you take the largest deductible, either the deductible under the general deductible provision or the deductible under the earth movement flood name windstorm provision, and that gives effect to that provision. Your Honor, you are reading out the exclusively applicable deductible provision in the policy if you do that. What you are doing is you're saying, forget about the unless. We will assume that the two or more provision applies because the unless reads out two or more from different perils. It's only there. And so you're back to my analysis because what you're back to is if it's earth movement, flood, wind, then the deductible is the same. You have to calculate it like we're talking about because the losses are the loss. The loss is a single loss and you calculate the deductible by reference to the individualized total insured values per interest and you choose the largest one. There's nothing in the policy that talks about aggregate. And if you look at the total insured value, we pointed out, total insurable value is not a defined term. So where do we go? We go to the schedule where we have total insured value per interest. I would say this, that total insurance values is also on the schedule and it's at the bottom. That's an aggregate. But total insured value per interest if we're talking about the deductible, there's no reason not to apply it. And the problem that Lexington and the district court have is that their interpretation assumes that the two or more applicable deductible provision is a policy-wide list of perils more than one of which can apply. And that's not right. The only ones that can apply to this type of loss are the earth movement, flood, name, wind, storm cause. What about Judge Miller's example of a fire and a hurricane that both cause? Understand that completely. If you look at the difference between the Bexar policy and the Lexington policy, it's all there. He's using the Bexar policy as the basis for that analysis because the Bexar policy lists a lot of perils and it says that if two or more of these perils apply, you choose the largest deductible. This policy doesn't do that. It says that the general deductible of $125,000 which is applicable to all those perils we talked about other than earth movement, flood, and name, wind, storm apply unless there's an earth movement, flood, and name, wind, storm in which case a specific deductible applies. There can't be two perils. He's reading a different policy. So your position is that the Bexar policy,           earth movement, flood, and name, wind, storm apply unless there's an earth movement. Bear County was decided correctly. Its analysis of the two or more provision is correct. But you think that there's a significant enough difference in the policy terms that Bear County is inapplicable to these facts. Do you have a case that is applicable? The closest one we could find is the Alex case out of Alabama. It's not directly on point but it does have a schedule of properties and it says that if there is a loss to more than one of the properties then you take the highest deductible for the particular property and use that as your deductible. We don't have that. What we do have is this schedule that we say is an analog to the next schedule of properties. This is a schedule of properties and it's a schedule of insured values. What we're saying is that BEXAR is a totally different policy. It has no unless language. This policy has unless language. It has a declaration schedule and it has a list of total insurable values per interest. To us, you have to use that or else the two or more applicable deductibles can't apply. Yes ma'am. May it please the court. My name is Marjorie Nichol and I represent Lexington Insurance Company. Judge Miller held that the deductible provision in this policy was unambiguous because Lexington provided the only reasonable interpretation as its interpretation is the only one that gives meaning to all of its parts. The deductible provision has three separate parts. Each one stands on its own. None of them are subsections of another. The first part is a catch-all deductible, $125,000. The second one applies when there's earth movement, flood, or named windstorm and or named windstorm. That's 5% of the total insurable values and the final provision is applied when there are two or more deductibles. There's no dispute about the first part. The second and third, there is a significant amount of dispute. The second part speaks of 5% of the total insurable values. The word total does in fact mean aggregate. So you do take all of the insurable values, you total them, and then you take 5%. Very clear. The third part says if two or more deductible amounts apply to a single occurrence. In this particular case, we don't have two or more deductible amounts. And that one was calculated in Part 2 by taking 5% of the total insurable values which came up with one deductible amount. So when you get to Part 3, you say, ah, two or more deductible amounts. This doesn't apply at all here. That doesn't mean it's meaningless just because it doesn't apply in this case. Judge Miller offered an example where it could apply and Lexington did as well. Judge Miller's example is if there is a fire and a named windstorm, which is not all that infrequent, causes a loss. In that case, the fire goes to the catch-all deductible, $125,000, and the named windstorm goes to the second part, the 5%, which has to have a minimum of $250,000. Obviously the second part, the named windstorm, is going to be the higher one because it has a $250,000 minimum. That doesn't mean Part 3 of the provision is meaningless. It just means that tells you if you have a catch-all and you have a 5%, it's the 5% one that you're going to charge. If there are only two types of deductible amounts, how can there be two or more deductible amounts? In that example, fire and named windstorm together cause one loss. Another example is named windstorm and flood cause one loss. In that case, you only apply the higher. How can it be more? How can it be more than two? When there are only two types. I don't know if there can be more than two deductibles. Then why does it say two or more? Well, two, it applies if there are two. Why is the word or more there? In case there are more. How can there be more? Because if there are only two types. No, no, no. Because earth movement is one. Flood is one. Named windstorm is one. Catch-all. There's four different types. There's four different types. Each one of those counts as one type. So there could be two or more. Correct. So that gives meaning to all three parts. It's reasonable. But in this case, there's not. In this case, there happens not to be. But there can be such a situation. I wanted to just play out the argument that's being made by counsel. I was just playing out the argument that's being made by counsel to see. What do you do about the part that counsel says that this policy is unique and that the case law that was relied upon is inapplicable? Actually, I don't think that Judge Miller relies on the Bexar County case at all. Nor does Lexington. The only reason Lexington even cites that case is because it provides the example of a multi-parallel occurrence named windstorm and flood. And that supports... Do you agree that the language is different and we don't look to that policy's interpretation? In fact, there's really no law to give you any guidance here. It's just a plain reading of the provision. So you agree with counsel again that there's not really a good case to go by? That's correct. It's based on a plain reading of the insurance provision. And it's unambiguous. Um, in the event... ...again. That's right. That's right. Um... Of course, we disagree about how it's We do agree that it's unambiguous. In the unlikely event, however, that you do find that it is ambiguous, we do ask that we can go back to Judge Miller. We did not conduct any discovery whatsoever. We agreed that we would not conduct any discovery. Um... This provision shouldn't just automatically be rendered in favor of the insured. We're at least entitled to determine what were the surrounding circumstances of the policy negotiation. There are many Texas cases that talk about that. Um... One of them is Houston Exploration v. Wellington. That's from 2011. Um... It says a written contract must be construed to give effect to the party's intent expressed in the text as understood in light of the facts and circumstances surrounding the contract's execution. Subject to the parole evidence rule. Parole evidence rule applies when parties have a valid integrated written agreement. But the rule does not prohibit consideration of surrounding circumstances that inform rather than vary from or contradict the text. That includes commercial other setting in which the contract was negotiated. It goes on to say that in that case it was a London market insurance policy. And they said it was crucial the manner in which the insurance in this case was negotiated in the terms. This policy was also negotiated in the London market. So information about exactly how it was negotiated may be enlightening to the meaning of the provision. Um... And we would also like to present the possibility that the sophisticated insured exception should apply. I realize that has not been recognized by the Texas Supreme Court, but nor has it been rejected. And the District Court should have the opportunity to make its guess as to what the Texas Supreme Court would do. As the Northern District of Texas has already done and it said Judge Fitzwater said that the Texas Supreme Court would apply that exception. So that is Lexington's argument unless you have questions you'd like me to address that I have not addressed. Thank you, Counselor. I believe we have your argument. You've saved time for rebuttal, Counsel. Okay. No, there, not you. That's okay. Not you. Your Honor, interestingly now, we hear that BEXAR is not applicable. We'll read from BEXAR at page 279 from FM Reasons that it is relatively easy to envision a situation where a single loss could, for example, result from both flood and wind, in which case the larger the wind or flood deductible would apply. From the District Court's opinion at page 10, the next paragraph which provides instruction when two or more deductibles apply because a plain reading of this section indicates that different types of deductible may apply as opposed to different types of deductibles for each property. For instance, both a named windstorm deductible and a deductible for fire damage could apply as a fire and named windstorm could be part of the same occurrence under the definition of that term. Sounds familiar. And in Lexington's brief at page 8, Lexington's example concerns a named windstorm and a flood forming part of the same occurrence. C, County Hospital District, that's my pronunciation and I apologize, noting insurer's position that is relatively easy to envision a situation where a single loss could, for example, result from both flood and wind, in which case the larger the wind and flood deductibles would apply. In that scenario, only the larger of the named windstorm or the flood deductible would apply. But in this case we're only talking about a named windstorm. You agree with that? I agree with that, but I also would point out to the Court that flood is within the named windstorm deductible. You can't have a larger deductible for flood, named windstorm, and earth movement. But wait, why couldn't you, I mean, these Katrina cases, there's tons of them out there where there was a part of it was flood, you know, 100,000 of the damage to the house was flood, 200,000 was because the wind blew some stuff over. I mean, that was, it's been a common, you can have the same occurrence with different causes that get attributed to... But those perils all have the same deductible. If you want to take that position, you have abided by my interpretation, because my interpretation is a property by property analysis, and what you would have to do there, because you have the same deductible. You have the same deductible for flood, for earth movement, and for named windstorm. In BEXAR, you have different deductibles for the various things. But if there's fire too, in Judge Miller's example, then there's a different... There can't be, because if there's fire, that deductible is by the policy terms excluded from consideration. That deductible applies unless a specific deductible applies, which is earth movement, flood, named windstorm. You can't say... I'm going to have to tell you, this may be the first time in the history of my being an appellate judge that I feel inclined to say, please lower your voice. I'm sorry, Your Honor. You're not the first that's provided me with that request. I apologize. The policy itself precludes the applicability of two deductibles if we are talking about the range of perils outside of earth movement, flood, and named windstorm. By its terms, it says those apply unless the loss is caused by earth movement, flood, or named windstorm. You can't say, well, that means that if there's two or more, the named windstorm deductible applies because it's bigger. It doesn't apply because it's bigger. It applies because it's an exclusive deductible related to that type of loss. We've briefed it the way we've briefed it as far as the ambiguity. We say that it's not ambiguous. We also have cited case law for the proposition that there's no sophisticated insured exception within Texas law. There's one Texas district court. We've recognized that. But there's no Texas law that out of Texas courts that have recognized a sophisticated insured. We think that the Lexington interpretation and interpretation of the district court can't stand because it reads out the two or more deductible and we appreciate the court's attention and our privilege of appearing here today. Thank you very much. This concludes the arguments that this panel has scheduled this week and we will stand adjourned pursuant to the usual order. Thank you very much.